### IN THE UNITED STATES BANKRUPTCY COURT FOR THE
### EASTERN DISTRICT OF TENNESSEE

In re

BRIAN LEE KNIGHT
d/b/a RAINBOW WATER

Case No. 05-33317

Debtor

DAVID G. LIVELY and
HEATHER ANN PHILLIPS

Plaintiffs

v.    Adv. Proc. No. 05-3154

BRIAN LEE KNIGHT

Defendant

### **M E M O R A N D U M**

**APPEARANCES:**    LITTLE & MILLIGAN, PLLC
   F. Scott Milligan, Esq.
   900 East Hill Avenue
   Suite 130, Regency Business Park
   Knoxville, Tennessee 37915
   Attorneys for Plaintiffs

   MOSTOLLER, STULBERG & WHITFIELD
   Ann Mostoller, Esq.
   136 S. Illinois Avenue
   Suite 104
   Oak Ridge, Tennessee 37830
   Attorneys for the Debtor/Defendant

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding is before the court upon the Complaint Objecting to Discharge filed by the Plaintiffs on September 19, 2005, as amended by an Amended Complaint filed on September 19, 2006 (Complaint), seeking a judgment against the Debtor/Defendant (Debtor), along with a determination that the judgment is nondischargeable pursuant to 11 U.S.C.A. § 523(a)(4) or (6) (West 2004).

The trial was held on April 9, 2007. The record before the court consists of Stipulations for Trial filed by the parties on March 30, 2007, Supplemental Stipulations for Trial filed on April 6, 2007, thirty-six exhibits introduced into evidence, and the testimony of five witnesses, Stephen Feinberg, Melissa Knight, both Plaintiffs, and the Debtor.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(I) (West 2006).

# I

On July 1, 2003, pursuant to an oral purchase agreement, the Plaintiffs transferred to the Debtor their interest in a water service business operating in Anderson County, Tennessee, and surrounding counties known as Rainbow Water Service (Rainbow Water) for the gross purchase price of $425,000.00. The Debtor made a $25,000.00 down payment, with the balance to be financed by the Plaintiffs at $4,000.00 per month, with $2,000.00 to be paid to each Plaintiff. The business assets purchased by the Debtor included customer accounts, the Plaintiffs' inventory of water coolers, water containers, the office location, office equipment such as computers and software, books, records, and two vehicles. *See* TRIAL EX. 2.

The Debtor and the Plaintiff, David Lively, subsequently entered into a one page handwritten agreement on August 28, 2003 (Agreement), which reads as follows:

> I David Lively agree to sell Business of Rainbow Water to Brian Knight, that consist [sic] of approx. 350 customers & coolers & bottles & any office equipment, & any money coming to me from sales of water or rent from water cooler's [sic] for the amount of $425,000.00. With payment ea. month of $1,900[1] until full amount of agreement has been collected.
>
> Also if 2 payments or more falls behind we agree that the business goes back to First ownership.
>
> I' [sic] am not responsible [sic] for any suits or judgements that may accoure [sic], for any reason. The First Payment is to start Sept. 1st 2003.
>
>               Transferee
>             Signed by owner David Lively
>
>             Signed by Purchaser <u>Brian Knight</u>
>             Date  8-28-03
>
> Diane Meredith Notary
> comm. expires 1-18-05

TRIAL EX. 1.

The Debtor operated the business under the continued name of Rainbow Water, making monthly payments of $3,900.00 through January 2004. In order to allow the Debtor to keep the business, he and the Plaintiffs attempted to rework their agreement during the spring of 2004, including discussions for a modification of payments to the Plaintiffs; however, these attempts proved unsuccessful. Despite the parties' inability to reach an agreement as to a modified payment

---

[1] The Agreement served only to effectuate a reduction of the Debtor's monthly payment obligation to the Plaintiff, David G. Lively, from $2,000.00 to $1,900.00. It is undisputed that the Agreement does not in any way reduce or eliminate the Debtor's obligation to make a $2,000.00 monthly payment to the Plaintiff, Heather Phillips, nor does it purport to incorporate into its terms other aspects of the oral contract for the Debtor's purchase of Rainbow Water.

schedule, the Debtor made several partial payments through May 2004, but he made no further payments after May 2004.

The Debtor continued operation of the business through the summer of 2004. In August 2004, the Plaintiffs filed a Complaint and Petition for Temporary Injunction against the Debtor in the Chancery Court for Anderson County, Tennessee (Anderson County Chancery Court), seeking recovery of the business along with additional money damages for losses they allegedly incurred by the Debtor failing to make his payments under the Agreement and for wrongful retention of the business (State Court Lawsuit). TRIAL EX. 11. The Debtor filed an Answer in the State Court Lawsuit on November 16, 2004, which was amended by an Amended Answer filed on March 9, 2005. TRIAL EX. 12; TRIAL EX. 12a. During the pendency of the State Court Lawsuit, the Debtor continued operation of Rainbow Water.

The Anderson County Chancery Court held a hearing in the State Court Lawsuit on March 14, 2005, at which the parties appeared and presented proof. At the conclusion of the proof, the court rendered an oral decision finding that the Plaintiffs were entitled to recover the Rainbow Water Company business, including all assets and accounts conveyed to the Debtor.[2] An order reflecting these findings was submitted to the court and signed by the chancellor on April 4, 2005; however, upon the Debtor's motion, this order was set aside because it was not approved for entry by the Debtor's attorney. TRIAL EX. 13; TRIAL EX. 14. The Debtor then prepared a proposed Final

---

[2] The court also awarded monetary damages in the amount of $40,000.00, representing the monthly payments that the Debtor failed to make during his retention of the business, and in the amount of $3,100.00, representing an insurance settlement that the Debtor received for damage to a storage building. *See* TRIAL EX. 15.

4

Order that the Plaintiffs did not approve. TRIAL EX. 15; TRIAL EX. 15a. The Final Order was never entered by the state court.

On April 14, 2005, the Debtor returned certain assets, books, records, personal property, and customer accounts. The Plaintiffs testified that the Debtor did not, however, return the following property to them upon returning the business: (1) files on QuickBooks 2001[3]; (2) the customer database beyond July 2001; (3) files of customers evidencing paid and non-paid invoices; (4) route cards beyond July 2003; (5) invoices after July 2003; (6) daily sales records after July 2003; (7) eighty-five coolers; (8) 855 bottles; (9) labels for bottles; (10) lids and cups; and (11) a storage building. *See also* TRIAL EX. 3; TRIAL EX. 6. Additionally, although he returned two trucks, a 1984 GMC and a 1994 Ford, one was returned with a broken windshield, full of old used roofing material, which was later towed off by the Oak Ridge police department, and the other was returned with the radio missing. Similarly, the Plaintiffs testified that the Debtor did not leave the leased business premises, and that they were required to remove and reinstall the water filtration system, with the ozone generator not working.

On June 16, 2005, before the Final Order could be entered by the Anderson County Chancery Court, the Debtor filed the Voluntary Petition commencing his Chapter 7 bankruptcy case. TRIAL EX. 16. The Plaintiffs initiated this adversary proceeding on September 19, 2005, averring that the oral determinations of the Anderson County Chancery Court were properly decided and seeking a

---

[3] Ms. Phillips testified that when the Debtor purchased Rainbow Water, financial information was entered on the computer within the QuickBooks 2001 software. When the Plaintiffs received the personal property back from the Defendant, they discovered that he had installed QuickBooks 2004, had entered information on that software, and then removed QuickBooks 2004 from the computer.

5

nondischargeable judgment against the Debtor for their damages with respect to the transfer of Rainbow Water.

## II

Determinations as to the dischargeability of debts is governed by 11 U.S.C.A. § 523(a), which, as relevant to this adversary proceeding, provides:

> (a) A discharge under section 727[4] . . . of this title does not discharge an individual debtor from any debt—
>
> . . . .
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

11 U.S.C.A. § 523(a).[5]  Section 523(a) is construed strictly against the Plaintiffs and liberally in favor of the Debtor, and the Plaintiffs bear the burden of proving each element by a preponderance of the evidence. *Grogan v. Garner*, 111 S. Ct. 654, 661 (1991); *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998). Furthermore, it is within the jurisdiction and authority of the bankruptcy court to both adjudicate the Plaintiffs' claims and award any necessary damages. *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 792 (Bankr. E.D. Tenn. 2003) (citing *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 965 (6th Cir. 1993)).

---

[4] A Chapter 7 debtor receives a discharge of pre-petition debts, "[e]xcept as provided in section 523 of this title[.]" 11 U.S.C.A. § 727(b) (West 2004). This accomplishes the goals of Chapter 7 to relieve an "honest but unfortunate" debtor of his debts and allow for a "fresh start" through discharge. *Buckeye Retirement, LLC v. Heil (In re Heil)*, 289 B.R. 897, 901 (Bankr. E.D. Tenn. 2003) (quoting *In re Krohn*, 886 F.2d 123, 125 (6th Cir. 1989) (citing *Local Loan Co. v. Hunt*, 54 S. Ct. 695, 699 (1934))).

[5] The Pretrial Order entered on December 14, 2006, calls for the court to determine the dischargeability issues under sections 523(a)(4) and/or (a)(6). However, during oral argument, Plaintiffs' counsel stated that the Plaintiffs were limiting their claim solely to § 523(a)(6). The court need not, therefore, consider § 523(a)(4).

The Plaintiffs ask the court to enter a nondischargeable judgment against the Debtor under § 523(a)(6), arguing that the Debtor willfully and maliciously injured them through his conversion of the business assets prior to returning them and/or by not returning them at all. In order to be successful under this subsection, the Plaintiffs must prove the existence of "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 118 S. Ct. 974, 977 (1998). This requires proof that the Debtor either desired to cause the consequences of his actions, or he believed with reasonable certainty that such consequences would occur. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999). "That a reasonable debtor 'should have known' that his conduct risked injury to others is simply insufficient. Instead, the debtor must 'will or desire harm, or believe injury is substantially certain to occur as a result of his behavior.'" *Guthrie v. Kokenge (In re Kokenge)*, 279 B.R. 541, 543 (Bankr. E.D. Tenn. 2002) (quoting *Markowitz*, 190 F.3d at 465 n.10). Accordingly, based upon Sixth Circuit authority, "unless the actor desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it, he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Markowitz*, 190 F.3d at 464; *Kokenge*, 279 B.R. at 543 (citations omitted).

In other words, nondischargeability under § 523(a)(6) requires a deliberate or intentional injury to a specific party, *Kokenge*, 279 B.R. at 543, and "a debtor's actions must be determined to be the cause of the creditor's injury." *In re Smith*, 249 B.R. 748, 750 (Bankr. S.D. Ohio 2000). "Although the 'willful' and 'malicious' requirements will be found concurrently in most cases, the

terms are distinct, and both requirements must be met under § 523(a)(6)." *S. Atlanta Neurology & Pain Clinic, P.C. v. Lupo (In re Lupo)*, 353 B.R. 534, 550 (Bankr. N.D. Ohio 2006).

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the consequences of an act," not simply "the act itself." RESTATEMENT (SECOND) OF TORTS § 8A, comment a (1964) (emphasis added).

*Elza v. United States*, 335 B.R. 654, 659 (E.D. Ky. 2006) (quoting *Geiger*, 118 S. Ct. at 977). "To find that a debtor intended to cause the consequences of his act or believed that the consequences were substantially certain to result from his act, it is necessary to look into the debtor's mind, subjectively." *Monsanto Co. v. Wood (In re Wood)*, 309 B.R. 745, 753 (Bankr. W.D. Tenn. 2004). And, with respect to § 523(a)(6), "'malicious' means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent." *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 308 (B.A.P. 6th Cir. 2004). "Lack of excuse or justification for the debtor's actions will not alone make a debt nondischargeable under § 523(a)(6)." *Lupo*, 353 B.R. at 550.

Based upon the proof presented, it appears that the Plaintiffs contend that the Debtor converted their business by allowing it to dissipate under his control and by not returning all components when he surrendered it back to them. "An act of conversion may constitute willful and malicious injury depending on whether or not the debtor intended to cause the harm or was

substantially certain that such harm would occur." *Sweeney v. Lombardi (In re Lombardi)*, 263 B.R. 848, 853 (Bankr. S.D. Ohio 2001). Under Tennessee law, conversion is an intentional tort and requires proof that a party appropriated another's property for his own use, by exercising dominion and control in exclusion or defiance of the owner's right to use and benefit from the property. *Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977). "[G]ood faith is generally immaterial." *Carmical v. Kilpatrick*, No. M2002-00346-COA-R3-CV, 2002 Tenn. App. LEXIS 903, at *16, 2002 WL 31863293, at *5 (Tenn. Ct. App. Dec. 23, 2002) (quoting *Mammoth Cave Prod. Credit Ass'n*, 569 S.W.2d at 836). In cases involving secured property, the security holder may not sue for conversion of its collateral unless the debtor disposes of the collateral in an unauthorized manner. *Mammoth Cave Prod. Credit Ass'n*, 569 S.W.2d at 836. Damages for conversion are generally limited to consequential damages, i.e., the value of the property at the time it was converted plus interest, that must be proved with reasonable certainty. *Caldwell v. Canada Track, Inc.*, No. W2003-00264-COA-R3-CV, 2004 Tenn. App. LEXIS 405, at *20-21, 2004 WL 1459418, at *7 (Tenn. Ct. App. June 28, 2004).

A finding of nondischargeability under § 523(a)(6) requires proof of malicious or fraudulent intent as to the specific party whose property has been injured. A prime facie case of conversion in Tennessee has no good faith requirements, as it is an intentional tort, and thus, it falls within the scope of § 523(a)(6). In support of their conversion claim, the Plaintiffs argue that when the Debtor realized he was not going to be able to make payments on the business, and it would be reverting back to the Plaintiffs, he began to undermine the business in order to reduce its value by (1) retaining a substantial amount of business records; (2) deleting computer business records including sales

information and customer data; (3) returning the business vehicles in poor condition; (4) not allowing the Plaintiffs access to the business premises and removing the lettering from the window; and (5) operating a competing business known as Diamond Water with his wife, Melissa, using proceeds and equipment from Rainbow Water.

The Plaintiffs made these many allegations concerning the Debtor's conduct regarding his operation of Rainbow Water and with respect to his keeping assets after he was to surrender Rainbow Water back to the Plaintiffs; however, the proof in the record establishes simply that this was a business deal between friends that ended poorly and that the Debtor did not run the business in the same manner that the Plaintiffs had. Moreover, the Plaintiffs did not offer sufficient proof to substantiate their claims that the Debtor willfully and maliciously injured them by converting property belonging to them, and accordingly, any debt owed as a result of the Debtor's actions concerning Rainbow Water were discharged on October 3, 2005.

The Plaintiffs testified that when the Debtor bought Rainbow Water in July 2003, there were approximately 350 active customers, but when it was returned in April 2005, there were less than 150 customers, and that each of these accounts was worth $545.00 apiece.[6] They also contend that when the Debtor acquired the business, there were approximately 242 water coolers and approximately 1600 water jugs, but when he returned the assets to the Plaintiffs, he did not return more than 85 coolers and approximately 855 water jugs, and he retained many of the business records detailing the activity and status thereof during the time he operated it from July 1, 2003,

---

[6] The tax returns for Rainbow Water in 2002 and 2003, however, do not reflect that the revenues for those years yielded $545.00 per customer per month. See TRIAL EX. 31; TRIAL EX. 32.

through April 2005, including, specifically, route cards tracking specific customer activity and various files.

The Debtor, however, consistently testified, to the court's satisfaction, that he returned assets that had belonged to Rainbow Water in July 2003, when he purchased the business from the Plaintiffs, but that, based upon the advice of his attorney in the Anderson County Lawsuit, Robert Wilkinson, he was not required to turn over to the Plaintiffs any assets purchased or records created during the time that he operated the business. Included among those assets are approximately 19 coolers and 300 water bottles, which the Debtor testified he purchased, partly with Rainbow Water funds and in part on his father-in-law's credit card. The Plaintiffs offered nothing to refute this testimony.

With respect to the two vehicles that sustained damage, the Plaintiffs argued that the Debtor returned one with the radio removed; however, in her testimony, Ms. Phillips testified that she had no proof that the Debtor caused this damage. The Plaintiffs also argued that the other, a box truck, had a cracked windshield, was filled with debris from a roofing job being performed by the Debtor, and was later confiscated by the City of Oak Ridge as an abandoned vehicle. *See* TRIAL EX. 29. At trial, the Debtor testified that the Plaintiffs were aware that this vehicle would not start, that he offered to pull the trash out of it but never did, and that it sat upon his property for two or three weeks before it was towed. Nevertheless, the fact that the Debtor once used the truck, which was later not operational, for a roofing job and did not clean it out does not rise to the level of conversion as required by Tennessee law and/or § 523(a)(6).

When the Debtor purchased Rainbow Water in July 2003, the assets of the business ceased to belong to the Plaintiffs, and instead, were transferred to the Debtor, who was at liberty to run the business as he saw fit, in the manner he chose. The fact that he did not run Rainbow Water in the way that the Plaintiffs had, and therefore, when they regained the business, the Plaintiffs were required to expend funds to re-establish it to run as before it was sold, cannot be construed as a "willful and malicious injury" under § 523(a)(6). The parties' oral agreement, memorialized, in part, on August 28, 2003, in the handwritten document marked into evidence as Trial Exhibit 1, provides that if the Debtor missed two or more payments, the business would be returned to the Plaintiffs. Irrespective of the Plaintiffs' assertion that this constituted a security interest in the assets of Rainbow Water, there is no documentation in the record evidencing a valid security interest in those assets. The Plaintiffs' arguments that the Debtor willfully allowed the business to decline in value once he breached the Agreement and defaulted in May 2004 are not substantiated by the record.

Furthermore, and more importantly for the purposes of § 523(a)(6), there is nothing in the record to evidence that the Debtor, who by his own admission was not a good salesman and had no prior experience in the water business, actually injured the Plaintiffs, much less that he willfully and maliciously intended to injure the Plaintiffs by sabotaging Rainbow Water and/or the Plaintiffs through any of his business decisions. There is no proof that at any time the Debtor intentionally tried to lose clients, or that once he was ordered to return the business to the Plaintiffs, that he tried to prevent customers from going with Rainbow Water. He acknowledged that, after April 2005, he continued to supply water to customers that were going to be customers of Diamond Water, as well

as any that expressly called the office and requested water; however, these actions were not means by which to cause a willful and malicious injury to the Plaintiffs.

The Plaintiffs also testified that the Debtor caused Rainbow Water's advertisement in the telephone book to be removed in an attempt to make customers believe that Rainbow Water was out of business, while placing a new advertisement for Diamond Water. *See* TRIAL EX. 28. However, the Debtor's testimony that he did not place the advertisement for Diamond Water, that it would have been done by his wife, and that he did not request removal of Rainbow Water's advertisement was credible, as was his testimony that he did not openly solicit any of Rainbow Water's customers to switch to Diamond Water. This testimony is supported by Mrs. Knight's testimony that Diamond Water currently has only twenty-five customers and that she and the Debtor are not attempting to grow that business because of the conflicts that arise with Rainbow Water.

Additionally, there are photographs evidencing that a chair was damaged, that some water bottles were damaged, that the windshield on one of the trucks was broken, that the storage shed was damaged, and that letters were scraped off the outside window of the leased premises. *See* COLL. TRIAL EX. 17. The Debtor acknowledged that he returned these items in their damaged condition but testified that he did not cause any of the damage. Additionally, in her testimony, Ms. Phillips stated that she does not actually know who caused the damage, and in fact, she specifically testified that she did not think that the Debtor intentionally damaged the water bottles, but that he brought them and left them at the Plaintiffs' new business premises after holding on to them for a period of time.

Nondischargeability under § 523(a)(6) requires an injury, maliciously and willfully caused by the Debtor, who intended to cause that injury. Nothing in this record reflects any such action. Accordingly, the Plaintiffs' Complaint shall be dismissed.

An order consistent with this Memorandum will be entered.

FILED:  May 18, 2007

                          BY THE COURT

                          */s/  RICHARD STAIR, JR.*

                          RICHARD STAIR, JR.
                          UNITED STATES BANKRUPTCY JUDGE